[Cite as *State v. Coran*, **2014-Ohio-4406**.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### CLARK   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2014-CA-17 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CR-516 |
| v. | : | |
| | : | |
| TYRONE CORAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 3rd day of October, 2014.

. . . . . . . . . . .

RYAN A. SAUNDERS, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

BRIAN D. BRENNAMAN, Atty. Reg. #0088988, 1616 Turner Road, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}     Tyrone Coran appeals from his conviction and sentence on one count of gross

sexual imposition in violation of R.C. 2907.05(A)(5).

{¶ 2}   Coran advances two assignments of error. First, he contends the trial court erred in classifying him as a Tier II rather than a Tier I sex offender. Second, he claims his conviction is against the manifest weight of the evidence.

{¶ 3}   At trial, the victim testified that she was in her bedroom asleep on the morning of July 4, 2013. In bed with her were her two-year-old granddaughter and her son, both of whom were asleep. (Trial Tr. at 95, 97). The victim testified that she felt someone jerking on her arm. She then felt a hand reach under the blanket and touch her vagina outside her underwear. (*Id*. at 96, 103). She became fully awake after this touching. (*Id*. at 103). She screamed, opened her eyes, and saw Coran, who was a friend of her son and nephew, sitting next to her on the bed. (*Id.* at 103-104). She identified him as the person who was touching her. (*Id*. at 96). After she screamed, Coran left the room, went out the front door, and crossed the street. (*Id*. at 97). The victim recalled that, as she was waking up, she had heard Coran say something about Xanax. She could not recall him saying anything else.[1] (*Id*.).

---

[1] On appeal, Coran cites the victim's trial testimony for the proposition that he and the victim had arranged to exchange food stamps for Xanax and that they had a conversation about Xanax in the bedroom. (Appellant's brief at 2). These allegations are a misrepresentation of the victim's testimony. On the cited pages, she explicitly denied ever having a conversation with him about exchanging food stamps for Xanax. (Trial Tr. at 105). She also denied saying anything to him other than screaming. (*Id.* at 97).

**{¶ 4}** After the incident, the victim called the police and provided Coran's first name and a physical description. (*Id.* at 109). She also identified him in a photo spread. Coran subsequently was arrested and charged with gross sexual imposition. Based primarily on the victim's testimony, a jury found him guilty.[2] At sentencing, the trial court classified him as a Tier II sex offender and imposed an eighteen-month prison sentence. This appeal followed.

**{¶ 5}** In his first assignment of error, Coran challenges his Tier II classification. He contends his conviction under R.C. 2907.05(A)(5) required a Tier I classification. The State has conceded error in the trial court's classification, and we agree. Under R.C. 2950.01(E)(1)(c), a person convicted of gross sexual imposition in violation of R.C. 2907.05(A)(5) is a Tier I sex offender. Accordingly, Coran's first assignment of error is sustained.

**{¶ 6}** In his second assignment of error, Coran challenges the manifest weight of the evidence to sustain his conviction under R.C. 2907.05(A)(5), which provides, in relevant part, that no person shall have sexual contact with another, not the spouse of the offender, when the ability of the other person to resist or consent is substantially impaired because of a mental or physical condition and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is so impaired. Here Coran contends the weight of the evidence fails to establish (1) that he is the person who touched the victim's vagina or (2) that he knew or had reasonable cause to believe the victim was asleep.[3]

---

[2] Although the State called a number of additional witnesses, and other people were present in the victim's house, none of them saw the incident between Coran and the victim. For his part, Coran did not testify and presented no defense.

[3] On appeal, Coran does not dispute that sleep is a physical or mental condition that substantially impairs a person's ability to resist or consent to sexual contact. *See, e.g.*, *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 19.

{¶ 7}    When a conviction is challenged as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest-weight analysis, the credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder, be it the jury, or, * * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 477684, *5 (Aug. 22, 1997).

{¶ 8}    With the foregoing standards in mind, we cannot say Coran's conviction is against the weight of the evidence. The victim testified that the only people in the room with her when she awoke were Coran, her two-year-old granddaughter, and her son. The victim was on one side of the bed, her son was on the other side, and her granddaughter was in the middle. When the victim opened her eyes, she saw Coran jump off of the bed where he had been sitting near her. (Trial Tr. at 104). Prior to the victim opening her eyes and screaming, her granddaughter and son had been asleep. (*Id.* at 97). The victim testified that no one other than Coran was in a position to have been touching her vagina. (*Id.*). Based on the victim's testimony, the jury

reasonably could have concluded that Coran did touch her vagina. Such a conclusion is not against the weight of the evidence.

{¶ 9} The evidence also supports a finding that Coran knew or had reasonable cause to believe the victim was asleep. Another occupant of the house, Harry Straight, testified that Coran was in the victim's bedroom for about thirty minutes before the victim screamed and Coran left. (*Id*. at 58, 63). As set forth above, the victim testified that she was asleep in her bed, along with her granddaughter and son, when the touching occurred. It was between eight and nine o'clock in the morning, and no lights were on in the room. These circumstances support a finding that Coran had reasonable cause to believe the victim was asleep. Indeed, it would be difficult to spend thirty minutes in a room with three sleeping people without becoming aware or having reasonable cause to believe that they were asleep.

{¶ 10} As for Coran's challenge to the credibility of the victim and the other witnesses, we see no basis for reversal. Although the record reveals some inconsistencies or discrepancies on certain secondary issues cited by Coran, the victim unequivocally testified that she awoke to find him touching her vagina. In its fact-finding role, the jury was free to believe this testimony.

{¶ 11} Finally, Coran contends his conviction is against the weight of the evidence because the victim's allegations of improper touching were not corroborated. In making this argument, he reasons that a sexual-imposition charge requires corroboration and that sexual imposition is a lesser-included offense of gross sexual imposition. Therefore, he infers that gross sexual imposition also requires corroboration. We disagree. In *State v. Guerra*, 2d Dist. Miami No. 2006-CA-5, 2006-Ohio-6661, ¶ 8, this court recognized that *sexual imposition* requires corroboration whereas a charge of *gross sexual imposition* under R.C. 2907.05 does not. *See also*

*State v. Shafeek*, 2d Dist. Montgomery No. 17149, 1998 WL 896475, *1 (Dec. 28, 1998) (noting that corroboration is required for sexual imposition but not gross sexual imposition). Coran's second assignment of error is overruled.

{¶ 12}   Having sustained Coran's first assignment of error, we reverse the trial court's judgment, in part, and remand the cause solely for the purpose of designating him a Tier I sex offender.

{¶ 13}   Judgment affirmed in part, reversed in part, and cause remanded.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Ryan A. Saunders
Brian D. Brennaman
Hon. Douglas M. Rastatter